IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEREMY MONSKY** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-643** |
| | : | |
| **AMAZON.COM, INC.** | : | |

**McHUGH, J.**                                                                                              **May 27, 2026**

**MEMORANDUM**

Plaintiff Jeremy Monsky is an avid online shopper, who found an offer on Amazon.com seemingly too good to be true, a $100 gift card for only $50. He proceeded to order some. Amazon filled the order with $50 gift cards for which he was charged $50. Chagrined that he got what he paid for and not the windfall for which he hoped, Monsky brought this lawsuit, raising fanciful claims seeking over $2 million in damages and declaratory relief. Amazon has moved to dismiss, a motion that will be granted in full, and the complaint dismissed with prejudice.

## I.      Facts as Pled

Jeremy Monsky describes himself as "a responsible shopper that spends significant time and effort looking for deals and other bargains online." Compl. ¶ 112. Sometimes, Monsky finds a price so low that he knows "that the deal or bargain . . . is not an intentional deal or marketing strategy . . . but is, in all likelihood, an unintentional act on the part of the seller, or some other unintentional consequence of other complex advertising systems utilized by the seller." *Id.* ¶ 113. In Monsky's experience, companies either honored these unlikely deals or voided the transactions. *See id*. ¶¶ 114-17.[1]

---

[1] For example, an airline honored a deal that allowed Monsky to fly round-trip to Hanoi, Vietnam for only $500, while Apple canceled an erroneously low sale price on AirTag GPS locators. *See* Compl. ¶¶ 115-16.

In late 2023, Monsky found a listing on Amazon.com which offered a $100 gift card to the consumer for only $50.  *See, e.g.*, *id.* ¶ 105.  Monsky bought an unspecified number of gift cards hoping to receive $100 for every $50.  *Id.* ¶ 103.  Instead, Amazon charged him $50 for every $50 in gift card value.  *Id.* ¶¶ 105, 108.  About eight months later, Monsky found a similar discrepancy on Amazon, made another purchase, and again got only the money he had paid for.  *Id.* ¶ 118.[2]  Amazon charged both transactions to Monsky's credit card on file.  *Id.* ¶ 106.

To explain Amazon's low sale price, the Complaint alleges a vast conspiracy: Monsky contends that Amazon intentionally maintains a "flaw in the design of [its] systems" so that customers' credit cards are charged for different gift card amounts than the website showed them, inducing customers to buy gift cards they would not have bought otherwise.  *Id.* ¶ 34.  Monsky offers a lengthy background narrative, alleging that Amazon's gift card interface presents chronic errors caused by programming flaws, that Amazon knows this, and that Amazon has denied any such errors to the banks which contract with Amazon to process each day's purchases.  *See id.* ¶¶ 42-81.  And because Amazon allegedly has had various forms of notice of this error dating back to 2010, and never fully corrected it, Monsky concludes the error was intentional.  *See id.* ¶¶ 82-99.[3]

---

[2] Amazon argues that this second purchase, in June 2024, is not pled clearly enough to place Monsky's November 2025 complaint within the two-year statute of limitations required by most or all of his claims.  *See* Def.'s Br. at 18-19, ECF 12-1.  While that paragraph of the Complaint is not clearly written, it is clear enough that Monsky alleges a second purchase in June 2024.

[3] At the Complaint's start, Monsky declares that "the purpose of this lawsuit" is to confirm his view that Pennsylvania criminal codes with monetary penalties may be enforced through private lawsuits.  Compl. ¶ 6.  Specifically, he hopes to find relief in a Pennsylvania criminal statute against "access device fraud" as a way of leveling the playing field between individual consumers and corporations, who he says engage in acts of interference with consumers' money that would be criminal if a natural person committed them.  *See id.* ¶¶ 3-6.  The Complaint also includes several paragraphs describing a prior action on similar grounds initiated by his counsel as support for punitive damages.  None of this is relevant to the pending motion.

## II.    Standard of Review

In the Third Circuit, motions to dismiss under Rule 12(b)(6) are governed by the well-established standard in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009). In addition to factual sufficiency, a Rule 12(b)(6) motion tests "the legal sufficiency of plaintiff's claim," asking "whether the plaintiff would be able to prevail even if [he] were able to prove all of [his] allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).[4]

## III.    Discussion

Monsky brings seven claims for relief: one based in Pennsylvania's consumer protection statute, four based in Pennsylvania tort law, and two requests for declaratory judgments. Across the claims, Monsky pleads facts that contradict his asserted causes of action, cites (and miscites) authority that is irrelevant or contradictory to his arguments, and asserts theories of liability with no foundation in Pennsylvania law. Because each substantive claim suffers from some such fatal flaw, each will be dismissed, and without a tether to an active controversy, the final two claims for declaratory relief fail.

### A.  Count One – Pennsylvania Unfair Trade Practices and Consumer Protection Law

Monsky first claims that when Amazon gave him only $50 worth of gift cards per $50 spent, it violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Con. Stat. § 201-1 *et seq. See generally* Compl. ¶¶ 100-21. But because Monsky fails to

---

[4] Monsky spends several pages of his response to the Motion arguing that the standards set in *Twombly* and *Iqbal* do not apply to his complaint, arguing for a bespoke standard, and reasserting a previous motion he filed seeking novel relief from this Motion. *See* Pl.'s Resp. at 10-13, ECF 23. Suffice it to say the motion to dismiss was appropriately filed and the prevailing standard cited above governs this Motion's resolution.

plead justifiable reliance, and in fact pleads his own lack of belief in Amazon's displayed price, this count will be dismissed.

The UTPCPL requires a private plaintiff to plead justifiable reliance. Structurally, the statute defines various methods of unfair competition, *see* 73 Pa. Con. Stat. §§ 201-2(4)(i)-(xxi), then defines a private right of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property, real or personal, *as a result of*" those enumerated unfair methods of competition, *id.* § 201-9.2(A) (emphasis added). The phrase "as a result of" has led courts applying the law to require justifiable reliance as a causal bridge between an unfair method and a plaintiff's damages. *See, e.g.*, *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) ("[D]ue to the causation requirement in the Consumer Protection Law's standing provision . . . a private plaintiff pursuing a claim under the statute must prove justifiable reliance.").

Despite this clear guidance, Monsky declares that "no Pennsylvania Court has ever held that reliance is a requirement for a violation under § 201-2(4)(xiv)," which is one of the twenty-one unfair methods of competition. Pl.'s Resp. at 15. But the cases he cites contradict him.[5] For example, the Pennsylvania Supreme Court in *Gregg v. Ameriprise Fin., Inc.* stated that "Section 201-9.2 . . . requires a private plaintiff to demonstrate justifiable reliance . . . regardless of which

---

[5] Monsky also incorrectly suggests that the Third Circuit has only applied the justifiable reliance element to cases arising out of the UTPCPL's final, catchall unfair method of competition. *See* Pl.'s Resp. at 14. *Hunt* emphatically says the opposite: "[t]he Pennsylvania Supreme Court] has categorically and repeatedly stated that . . . a private plaintiff pursuing a claim under the statute must prove justifiable reliance. . . . It has not recognized any exceptions, and has applied this rule in a variety of situations." 538 F.3d at 221-22.

4

unfair method of competition a plaintiff challenges in a private cause of action." 245 A.3d 637, 646 (Pa. 2021).[6]

Justifiable reliance has two requirements. First, "reliance" requires that a plaintiff made their purchasing decision *because* they both "heard and believed" the defendant's misrepresentation. *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). Second, that reliance must have been "justifiable," meaning that "common prudence or diligence *could not have* ascertained the truth." *Shane v. Hoffman*, 324 A.2d 532, 646 (Pa. 1974) (emphasis added).[7]

Here, Monsky pleads that he did not actually believe Amazon meant to offer him $100 worth of gift cards for $50. He starts by identifying himself as an experienced bargain hunter who actively searches for algorithmic glitches and other unexplained price drops; when he finds them, he places orders, hoping that companies will honor the deal, but knowing from experience that they may not. *See* Compl. ¶¶ 112-17. By implicitly conceding he did not expect that Amazon truly intended to make a money-losing offer, Monsky makes it implausible to conclude that he *believed* the advertised price was genuine. And by pleading his experience with finding and taking advantage of pricing anomalies, Monsky undermines his ability to plausibly allege that "common prudence or diligence could not have ascertained the truth" about the offer. Indeed, he would be uniquely qualified to do so. As to the UTPCPL, Monsky has pleaded himself out of court.

---

[6] *See also Schwartz v. Rockey*, 932 A.2d 885, 897 n.16 (Pa. 2007) ("[T]he justifiable reliance criterion derives from the causation requirement which is express on the face of section 9.2[, the statute's private-plaintiff standing provision]"); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202-03 (Pa. 2007) ("[A] plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance."); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the [UTPCPL], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").

[7] *Hoffman* focuses on the common law tort of fraud, which Pennsylvania courts have adopted in their analysis of individual claims brought under the UTPCPL. *See Toy*, 928 A.2d at 203.

### B.  Count Two – Common Law Fraud

Count Two alleges "Amazon committed bank fraud when it included Monsky's transactions for the mispriced gift cards, in the list of transactions that it sold to its Acquiring bank of the end of the business day that Monsky made the instant purchases."  Compl. ¶ 124.  This count lacks the required pleading that Monsky justifiably relied on the specific misrepresentation at issue.

A claim for fraudulent misrepresentation requires a plaintiff to show "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 87 (Pa. 2023).

Here, putting to one side that this is a far-fetched theory of fraud, the claim is technically deficient as to the fifth and sixth elements: Monsky needed to plead some way that *he* justifiably relied on the misrepresentation made in the first four elements.  "The primary inquiry on the question of liability [for fraud] is whether the plaintiff made out a case of damage *to himself* as the proximate result of *his justifiable reliance* upon a factual situation which the defendant had falsely represented *to him*."  *Neuman v. Corn Exch. Nat'l Bank & Trust Co.*, 51 A.2d 759, 763 (Pa. 1947) (emphasis added); *see also Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 (Pa. Commw. Ct. 2015) ("A claim for intentional misrepresentation requires justifiable reliance on the false information by the injured party. . . . we are unaware of[] any authority which would allow a third party to recover for a misrepresentation made to and relied upon by another party").  Here, Monsky does not explain how he relied in any way on Amazon's alleged statement to its partner bank, nor how that reliance was the cause of Monsky's alleged injury.

In response, Monsky points to a case where a plaintiff had a right of action based on false statements a defendant made to a third party, without the plaintiff's knowledge or reliance. *See* Pl.'s Resp. at 20-21 (discussing *Morganroth & Morganroth v. Norris, McLaughlin &. Marcus, PC*, 331 F.3d 406 (3d Cir. 2003)). But as Amazon points out, that case arose under the common law of New Jersey, not Pennsylvania, discussed a different tort that did not require the same elements as common law fraud, and has since been abrogated by the New Jersey Supreme Court. *See* Def.'s Reply at 9-10 (discussing *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261 (N.J. 2005)). Amending this pleading would require Monsky to either change the misrepresentation to something he himself relied on or explain how he justifiably relied on Amazon's communications with its bank. The former option would face the same issues as the UTPCPL claim discussed above, *i.e.*, that Monsky alleges the opposite of justifiable reliance; the latter option is utterly implausible. For this reason, Count II is also dismissed with prejudice.

### C.  Counts Three and Four – Negligence and Strict Liability

The next two counts plead Pennsylvania common law torts. Count Three asserts negligence based on Amazon's purported duty to take "reasonable care in designing and implementing its e-commerce platform." Compl. ¶ 131. Count Four seeks to impose strict liability on Amazon based on the alleged design defects that made its website "dangerous to the consumer or the consumer's property." *Id.* ¶ 148. These counts are fatally flawed because they seek an award of purely economic damages and would require a federal court sitting in diversity to invent causes of action not recognized by state law.

Generally, the economic loss doctrine recognizes no cause of action sounding in tort where the only injury alleged is a loss of money, as opposed to physical injury and damage to tangible property. *See, e.g., 2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Balt. &*

*Ohio R. Co.*, 501 A.2d 277 (Pa. Super. Ct. 1985)).  This prohibition applies to both negligence and strict liability claims.  *See Aikens*, 501 A.2d at 279.

Here, Counts Three and Four allege purely economic damages.  In his complaint, Monsky asserts that he was damaged by having to pay off his credit card for a charge different from the one he expected.  *See* Compl. ¶¶ 143, 157.[8]  As an initial matter, this is an ephemeral claim bordering on the silly.  Beyond that, in the most analogous case, the Third Circuit has held that even damaged physical credit cards are purely economic losses, on the grounds that allowing that exception would swallow the rule against economic losses.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 176-77 (3d Cir. 2008).  For the same reason, it is implausible that simply being charged money on one's credit card could amount to a non-economic loss.

In his reply brief, Monsky tries to argue his tort claims fall into an exception to the economic loss doctrine, because "recovery for purely pecuniary damages is permissible under a negligence theory provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract."  *Dittman v. UPMC*, 196 A.3d 1036, 1038 (Pa. 2018).  To that end, Count Three alleges "a duty to exercise reasonable care in designing and implementing its e-commerce platform and specifically providing for payment processing services," Compl. ¶ 131, as well as a "societal duty to warn" about possible discrepancies in the gift card-buying interface, Pl.'s Resp. at 22.  And Count Four mentions "a

---

[8] Monsky also pleads he was "injured in the loss of the benefit of his bargain" and "waste of his time and efforts and the denial of his ability to look for deals and bargains online."  Compl. ¶ 144.  Putting to one side that Amazon certainly did not enter into a bargain to lose money, these allegations fail to describe an actionable injury.

duty to provide its product, an e-commerce platform, that is free from a defective condition unreasonably dangerous to the consumer or the consumer's property." Compl. ¶¶ 148, 152.

But Monsky cites no authority for either of these duties, and the Court's research has not revealed any such cases under Pennsylvania law. As a federal district judge sitting in diversity, I am constrained to apply Pennsylvania common law as I believe the Pennsylvania Supreme Court would if presented with the same facts. *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). In doing so, "it is not the role of a federal court sitting in diversity to create its own common law." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 902 (3d Cir. 1983). But to the extent that I am obligated to predict how Pennsylvania courts would rule, I have no hesitation that the Pennsylvania Supreme Court would find no policy basis for supporting these theories of recovery.[9]

### D. Count Five – Breach of Fiduciary Duty

Monsky's final substantive count claims that Amazon violated a "special agency relationship that exists between a consumer and e-commerce platform," specifically that Amazon owed Monsky a fiduciary duty to charge his credit card for only the exact transaction amount that Monsky expected to receive. Compl. ¶¶ 158-70. There is no support for this special relationship under Pennsylvania law, and Monsky has not plausibly shown that it should exist here.

A fiduciary duty requires an agent to act only in their principal's interest. *See Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (citing Restatement (Second) of Agency § 387

---

[9] A related problem with the strict products liability claim is that no court applying Pennsylvania law has found that a website is a product. *See Macek v. Draftkings, Inc.*, No. 25-cv-1995, 2026 WL 802286, at *13 (E.D. Pa. Mar. 23, 2026) (reviewing Pennsylvania courts' tort treatments of websites and digital services). The sole products liability case Monsky cites deals with defective construction scaffolding. *See* Compl. ¶¶ 148, 152 (citing *Sullivan v. Werner Co.*, 306 A.3d 846, 848 (Pa. 2023)).

(1958)).  Forming a fiduciary relationship has three steps: "[1] the manifestation by the principal that the agent shall act for him, [2] the agent's acceptance of the undertaking and [3] the understanding of the parties that the principal is to be in control of the undertaking."  *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980).  Once formed, fiduciary relationships are the "highest duty implied by law."  *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017).  For that reason, they "usually involve some *special vulnerability* in one person that creates a *unique opportunity* for another person to take advantage to their benefit."  *Id.* at 821 (emphasis added).

Here, the relationship between Monsky and Amazon is that of buyer and seller.  Merchants across Pennsylvania receive and charge sales to consumers' credit cards an untold number of times every day, a commercial practice that facilitates transactions for both parties.  Amazon points out that Pennsylvania courts have declined to find a fiduciary relationship even between a bank and its members[10] or a lender and its borrower.[11]  *See* Def.'s Br. at 15.  Such relationships are far closer than that between a company engaging in e-commerce and its customers.  And Monsky offers no explanation as to why an entity with which he is dealing at arm's length while seeking to exploit errors in its website would owe him and duty to assist his efforts.

Monsky responds that customers' payment information is highly sensitive, pointing to data breaches and unauthorized credit card charges.  *See* Pl.'s Resp. at 30-32.  But Amazon accurately processed the charges Monsky authorized and is not alleged to have improperly disclosed his personal information.  The proposition that it should be deemed a fiduciary is frivolous.

---

[10] *See generally First Fed. Sav. & Loan Ass'n of Hazleton v. Off. of State Treasurer, Unclaimed Prop. Rev. Comm.*, 669 A.2d 914 (Pa. 1995).

[11] *See generally Grimm v. Discover Fin. Servs.*, No. 08-cv-747, 2008 WL 4821695 (W.D. Pa. Nov. 4, 2008).

### E.  Counts Six and Seven – Declaratory Relief

Monsky further asks for two forms of declaratory relief: first, he asks for an advance judicial declaration of the "maximum liability Amazon could face," declaring a "constitutional right . . . to have this legal issue settled and determined, *at the beginning of the litigation, not at the end*."  Compl. ¶¶ 174-75 (emphasis in original).  Second, he seeks a declaration that Pennsylvania citizens may bring civil suits against corporations under any Pennsylvania criminal laws which have monetary penalties, offering as an example the "access device" offense he discusses throughout his complaint.  *See generally id.* ¶¶ 193-204.

Generally, federal courts may not answer hypothetical questions through "advisory opinions."  *See United States v. Fruehauf*, 365 U.S. 146, 155-56 (1961).  For that reason, any request for declaratory relief must be related to a ripe, active controversy.  *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-48 (3d Cir. 1990).  When a court properly dismisses all the substantive counts of a lawsuit, any remaining requests for declaratory relief are rendered moot.  *See Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 126 n.5 (3d Cir. 2010).  Apart from that, the "constitutional right" Monsky asserts has no basis in law, and his request that a federal court declare a right on the part of Pennsylvania citizens to enforce the state's criminal laws through civil actions shows a complete lack of understanding of the federal courts' proper role in administering state law in diversity actions.

11

## IV.      Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted, and the action dismissed with prejudice.[12]  An appropriate order follows.


                                             /s/ Gerald Austin McHugh
                                             United States District Judge

---

[12] Leave to amend is liberally granted but is not warranted where "the amendment would be futile."  *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).  Amendment here would be futile because Monsky's core factual allegations show that he cannot prevail under any recognized cause of action, and there is no defensible basis on which this Court can purport to expand Pennsylvania law in the manner that he proposes.